## UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA CHARLESTON

**UNITED STATES OF AMERICA**

**v.**                                                   **CRIMINAL NO. 2:18-cr-00134**

**ALLEN H. LOUGHRY II**

### UNITED STATES TRIAL MEMORANDUM

#### Introduction

The United States files this Trial Memorandum to explain certain evidence related to the fraud charges against defendant Allen H. Loughry II. The Second Superseding Indictment (the "Indictment") charges defendant Loughry with defrauding the State of West Virginia and two private institutions, American University and the Pound Civil Justice Institute, by committing the following acts, among others:

- He falsely and fraudulently claimed mileage for trips on which he drove a Supreme Court [West Virginia Supreme Court of Appeals] vehicle and used a government fuel card for gasoline;

- He used government vehicles and government fuel cards for personal use under the false pretense that he was using the vehicles for official business, and lied to other Justices of the Supreme Court about his vehicle usage;

- He obtained under false pretenses, and unlawfully converted to his own personal use, a valuable and historic desk that belonged to the Supreme Court and which he took to his residence for a "home office;" and

- He attempted to conceal his fraudulent conduct by lying about his actions to government investigators and others, attempting to deflect attention away from himself by accusing others of malfeasance, and engaging in other fraudulent conduct.

Indictment ¶ 2. This Memorandum explains some of the particular evidence that the United States will offer to prove the fraud scheme.

**Discussion**

A.   Evidence Related to Supreme Court Vehicle/Fuel Card Usage.

The Indictment charges that defendant Loughry used a government vehicle and/or a government fuel card for personal use on the specific dates and times alleged in Counts 4 through 18. The United States intends to offer evidence that he also used a government vehicle and/or fuel card on nine other occasions as part of the fraudulent scheme.[1] The proof that he used the vehicle and/or fuel card on the 15 charged and nine uncharged occasions comes primarily through records. Those records will include:

- Supreme Court vehicle reservation logs, showing dates on which a vehicle was reserved for defendant Loughry, that will include instances where a destination was recorded and instances where no destination was recorded;

- Defendant Loughry's personal calendars, showing entries, or the lack thereof, for the periods described above;

- Business records of the company that issued the fuel cards, WEX, Inc. ("WEX"), which list specific purchases of fuel, including the amounts and locations, during those periods in which the United States alleges defendant Loughry used a government vehicle and/or fuel card for personal use;

- Records from the West Virginia Turnpike Authority showing when E-Z Pass® transponder transactions occurred, which correspond with times when defendant Loughry was allegedly using a specific government vehicle;

- Defendant Loughry's personal credit card records, showing transactions at or near the sites of the fuel purchases and during the times in which the United States contends defendant Loughry used a government vehicle and/or fuel card for personal use;

---

[1] Those occasions include: July 12-13, 2013; December 5-8, 2013; June 20-22, 2014; August 15-16, 2014; October 24-27, 2014; November 23-25, 2015; December 11-12, 2015; September 2-4, 2016; and July 7-8, 2017.

- Records of the State of West Virginia showing that the State did indeed pay for the fuel purchases noted above; and

- A summary chart, to compile and display pertinent information from the records described in the points above.[2]

To help establish that the vehicles used by defendant Loughry contained specific, identifiable fuel cards and E-Z Pass® transponders, the United States will offer testimony and records of four other instances of travel by drivers other than defendant Loughry.[3] Those people, all of whom were Supreme Court employees at the time of their travel, will testify about the specific vehicles they used (the same vehicles allegedly used by defendant Loughry during his allegedly fraudulent travels); their routes, including passing through toll booths (where applicable); and purchases of gasoline. Their testimony and pertinent records will tie a specific fuel card and/or E-Z Pass® transponder to the particular vehicle in question, at least at the time of their travel. The Supreme Court employees will also testify that the fuel cards and E-Z Pass® transponders used by them were assigned to the particular vehicles that they used and were supposed to stay with the vehicles.

The United States will also offer a third summary chart (already provided to defense counsel) that simply notes the mileage entered on the WEX fuel card records. The mileage chart serves as circumstantial evidence that particular fuel cards stayed with their assigned vehicles during times relevant to the fraud scheme charged in the Indictment.

---

[2] The United States gave specific notice of its intent to introduce charts under Fed. R. Evid. 1006 in its "Notice of Intent" filed on September 14, 2018. ECF-46. At this point, the United States intends only to offer one of those charts referred to in ECF-46.

[3] The four instances of travel by drivers other than defendant Loughry occurred on September 12, 2012; September 25, 2014; April 29, 2016; and August 10, 2017.

The testimony and records about travel by people other than defendant Loughry, as well as the mileage summary chart, satisfy the test for relevancy under Fed. R. Evid. 401. Rule 401 notes that evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action." Here, the testimony, records of other travel, and summary chart about mileage makes it more probable than not that specific fuel cards and transponders were assigned to, and stayed inside, the particular vehicles at times when defendant Loughry used the vehicles and/or fuel cards. The fact that a specific fuel card and transponder was assigned to and stayed inside a specific vehicle during relevant times is "of consequence in determining the action." Fed. R. Evid. 401(b). That is, when coupled with WEX and transponder records noted above on p.2, the facts showing the assignments of fuel card and transponders to particular vehicles makes it more probable than not that *someone* did indeed use a government vehicle and/or government fuel card on the occasions the United States contends were fraudulent.

Proof that *defendant Loughry* was that someone comes through records such as the Supreme Court vehicle reservation system, his personal calendar, and his personal credit card records. And, as additional, circumstantial evidence, the United States will offer testimony and records (already provided to defense counsel) about location data from defendant Loughry's cell phone. This data will help to establish that defendant Loughry was the person who traveled with a particular government vehicle and/or used a specific government fuel card on the occasions the United States contends are fraudulent. (This cell phone data is admissible as a business record under Fed. R. Evid. 803(6) and 902(11) and (13), and has previously been disclosed to defense counsel.)

4

All of the evidence discussed above is important to the government's case-in-chief, for each bit supplies a piece to the puzzle the United States must complete to establish defendant Loughry's guilt beyond a reasonable doubt. As the United States Supreme Court noted in *Old Chief v. United States*, 519 U.S. 172 (1997), evidence has "force beyond any linear scheme of reasoning, and as its pieces come together a narrative gains momentum, with power not only to support conclusions but to sustain the willingness of jurors to draw the inferences, whatever they may be, necessary to reach an honest verdict. This persuasive power of the concrete and particular is often essential to the capacity of jurors to satisfy the obligations that the law places on them." *Id.* at 187; *see also United States v. Phillips*, 588 F.3d 218, 226 (4th Cir. 2009) ("[I]n the context of a fraud investigation, the relevant evidence will in many instances be fragmentary, discovered in bits and pieces. . . . Standing alone, a particular document may appear innocuous or entirely innocent, and yet be an important piece of the jigsaw puzzle that investigators must assemble.")

B.  Code of Judicial Conduct.

The United States also intends to offer into evidence portions of the Code of Judicial Conduct (the "Code"), both the current version and the version in effect prior to November 12, 2015, when the current version took effect.[4] The United States does not intend to argue that defendant Loughry committed fraud merely because he violated any particular provision of the Code. Rather, and as explained further below, the United States will introduce the Code provisions discussed below to prove that defendant Loughry acted with fraudulent intent.

---

[4] Both versions are attached with this memorandum as Exhibits A and B, respectively.

The Indictment states in paragraph 16 that Supreme Court employees were not "allowed to claim and receive reimbursement for expenses he or she had not actually incurred." This allegation pertains to that aspect of the fraud scheme concerning American University and the Pound Civil Justice Institute, and Counts 1 – 3 of the Indictment.

The Code contains a provision that speaks directly to this paragraph of the Indictment. Rule 3.14 of the current version of the Code states: "Reimbursement of expenses for necessary travel, food, lodging, or other incidental expenses shall be limited to the actual costs reasonably incurred by the judge." The prior version of the Code contained a similar provision:  "Expense reimbursement shall be limited to the actual cost of travel, food, and lodging reasonably incurred by the judge. . . . Any payment in excess of such an amount is compensation." Canon 4H(1)(b). These provisions thus serve as evidence for the allegation contained in paragraph 16 of the Indictment.

More importantly, these provisions – Rule 3.14 of the current Code and Canon 4H(1)(b) of the prior version – are relevant to whether defendant Loughry acted with fraudulent intent in his dealings with American University and the Pound Civil Justice Institute. *See United States v. Morlang*, 531 F.2d 183, 191-92 (4th Cir. 1975) (in criminal prosecution for conspiracy to bribe, holding that insofar as the district court instructed the jury about standards of conduct for HUD employees involving specific mandates "such as . . . [not] using public office for private gain, etc." the district court's instruction to the jury was not error); *United States v. Grubb*, 11 F.3d 426, 433 (4th Cir. 1993) (canons of judicial ethics relevant to defendant's intent, motive, absence of mistake, on cross-examination of defendant). Evidence of defendant Loughry's conduct that would run counter to the standards set forth in the very specific provisions of  Rule 3.14 and Canon 4H(1)(b)

would help to establish defendant Loughry's knowledge of wrongful conduct. That evidence, thus, would be relevant to demonstrating that defendant Loughry acted with fraudulent intent.[5]

Another specific provision in the current Code, a similar provision in the previous Code, and the comments and commentary thereto, are also relevant to defendant Loughry's intent. Rule 1.3 of the current version of the Code states, "A judge shall not abuse the prestige of judicial office to advance the personal or economic interests of the judge or others, or allow others to do so." A comment to the Rule states, "It is improper for a judge to use or attempt to use his or her position to gain personal advantage or deferential treatment of any kind. For example, it would be improper for a judge to allude to his or her judicial status to gain favorable treatment in encounters with traffic officials. Similarly, a judge must not use judicial letterhead to gain an advantage in conducting his or her personal business." Rule 1.3, Comment 1 (page 21 of Exhibit A).

The previous version of the Code contains a similar admonition. Canon 2B of the previous Code states in pertinent part, "A judge shall not lend the prestige of judicial office to advance the private interests of the judge or others." Part of the commentary to Canon 2B is comparable to the comment to Rule 1.3 cited above: "For example, it would be improper for a judge to allude to his or her judgeship to gain a personal advantage such as deferential treatment when stopped

---

[5] The Code provisions cited above also serve as evidence that defendant Loughry acted under false pretenses in carrying out the fraud scheme. To prove that defendant Loughry committed fraud against the two private institutions – American University and the Pound Civil Justice Institute – the United States will demonstrate, among other things, that defendant Loughry acted under the false pretense that he actually incurred mileage expenses by driving his own car to the events hosted by the respective institutions. The Code helps to establish this point, in large part due to the Code provisions cited above dealing with reimbursement for only those expenses *actually* incurred.

by a police officer for a traffic offense. Similarly, judicial letterhead must not be used for conducting a judge's personal business." Canon 2B, Commentary (page 3 of Exhibit B).

Following the Fourth Circuit's guidance in *Morlang* and *Grubb,* specific mandates in the Code, "such as . . . [not] using public office for private gain," *Morlang,* 531 F.2d at 192, are relevant to demonstrating defendant Loughry's fraudulent intent with respect to his use of Supreme Court vehicles/fuel cards for personal use.

It also bears noting here that if defendant Loughry testifies at trial, even the broader, more general provisions of the Code, such as Rule 1.2 of the current Code and Canon 2A of the previous version, are proper topics for cross-examination.[6] *See Grubb*, 11 F.3d at 433. In *Grubb*, the defendant objected to the government's use of Canons 2 and 7 of the West Virginia Code of Judicial Ethics on cross-examination, which the district court permitted as they were relevant to show "intent, absence of mistake, and things of that nature." *Id.* at 433. The Fourth Circuit affirmed, finding no abuse of discretion in allowing the cross-examination, particularly where the district court gave a limiting instruction. *Id.* at 433 & n.6.[7]

---

[6] Rule 1.2 states: "A judge shall act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary, and shall avoid impropriety and the appearance of impropriety." Canon 2A states: "A judge shall respect and comply with the law, shall avoid impropriety and the appearance of impropriety in all of the judge's activities, and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary."

[7] Canon 2 of the Code of Judicial Ethics that applied at the time to the defendant encompassed both Canons 2A and 2B of the Code of Judicial Conduct in effect up until November 12, 2015 (Exhibit B to this Memorandum). Compare *Grubb*, 11 F.3d at 432 n.4 with Canons 2A and 2B, page 3 of Exhibit B.

8

C. <u>Video on Supreme Court Chambers</u>.

The United States also intends to introduce a portion of a film produced by the Supreme Court about its chambers and history.[8] Narrated by Senior Status Justice Thomas McHugh (who is expected to testify at trial), the film, among other things, explains the significance of Cass Gilbert to the Supreme Court as its designer and architect. At one point, the film shows the Justices, including defendant Loughry, walking into the chambers while the narrator discusses Cass Gilbert and his ideas for the design of the chambers. The United States will offer a portion (previously produced to defense counsel), not for the truth of any factual assertion in the film but to demonstrate the importance of Cass Gilbert to the Supreme Court. The mere fact that the Supreme Court produced a film featuring Cass Gilbert and his designs and handiwork and put it on the Court's website for all to see, makes it more probable than not that defendant Loughry would also have had an appreciation for Cass Gilbert's importance to the Supreme Court. This would, in turn, be relevant to defendant Loughy's motive and intent in taking a Cass Gilbert Desk from the Supreme Court and keeping it in his home for over four years, as alleged in the Indictment.

_____

[8] The entire film ("Chambers and History"), may be found here: http://www.courtswv.gov/public-resources/student-resources/FoundationJustice.html. The United States intends to play approximately the first eight minutes and the last minute, portions that discuss Cass Gilbert.

**Conclusion**

The United States respectfully requests the Court to accept and consider this Trial Memorandum in ruling on the various evidentiary issues that may arise at trial in this case.

Respectfully submitted,

MICHAEL B. STUART
United States Attorney

By:

s/Philip H. Wright
PHILIP H. WRIGHT
Assistant United States Attorney
WV State Bar No. 7106
300 Virginia Street, East
Charleston, WV  25301
Telephone:  304-345-2200
Fax:  304-347-5104
E-mail:  philip.wright@usdoj.gov

s/R. Gregory McVey
R. GREGORY McVEY
Assistant United States Attorney
WV State Bar No. 2511
300 Virginia Street, East
Charleston, WV  25301
Telephone:  304-345-2200
Fax:  304-347-5104
E-mail: greg.mcvey@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

It is hereby certified that service of the foregoing "UNITED STATES TRIAL MEMORANDUM" has been electronically filed and service has been made on opposing counsel by virtue of such electronic filing on this 26th day of September, 2018, to:

> John A. Carr, Esq.
> John A. Carr Attorney at Law, PLLC
> 179 Summers Street, Suite 209
> Charleston, WV 25301

> s/Philip H. Wright
> PHILIP H. WRIGHT
> Assistant United States Attorney
> WV State Bar No. 7106
> 300 Virginia Street, East
> Charleston, WV  25301
> Telephone:  304-345-2200
> Fax:  304-347-5104
> E-mail:  philip.wright@usdoj.gov