IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

UNITED STATES OF AMERICA

v.                                                                  CASE NO:   2:18-cr-00134-1

ALLEN H. LOUGHRY, II

### DEFENDANT'S SECOND MOTION FOR A NEW TRIAL

It is noted that the Defendant, by counsel, has previously filed a motion for a new trial under seal. Counsel for the Defendant will file a supplemental motion further addressing the relevant issues raised in that motion in accordance with the Court's Order. Doc. # 94.

In addition to those issues raised in the Defendant's previous motion, and in accordance with Fed. Rule of Crim. Proc. 29 and 33 and this Court's Order of October 23, 2018 (Doc. #87), the Defendant, Allen H. Loughry, II, by counsel, John A. Carr, respectfully moves this Court to enter a judgment of acquittal or, in the alternative, to vacate the convictions in this case, and grant a new trial in the interest of justice.

For the reasons stated below, the evidence introduced in this case is insufficient even in the light most favorable to the United States to sustain a conviction.

**A. Count 3 – Mail Fraud**

1. The third element of Count Three required the Unites States to prove beyond a reasonable doubt that the Defendant "used or caused the use of the U.S. mail…"  The testimony at trial did not support any such conclusion.  Instead, the testimony only indicated that it was the normal practice of the Pound Institute to use the U.S. Mail to deliver

reimbursement checks, but there was not testimony or evidence that was, in fact, what happened.

**B.  Counts 5, 6, 10, 11, 12, 15, 18 – Wire Fraud**

2.  The first element of these offenses required the United States to prove beyond a reasonable doubt that the Defendant devised a scheme to defraud or for obtaining money or property by "false or fraudulent pretenses, representations, or promises that were material…" (The United States charged that the money or property obtained during the scheme was gasoline purchased with the state purchasing card.)

3.  The testimony and evidence at trial in this matter fails to establish any such false or fraudulent pretenses, representations, or promises.  Instead, the consistent testimony at trial established that the West Virginia Supreme Court of Appeals ("Supreme Court") did not have **any** travel policy concerning the use of state vehicles by the Justices, that the Justices were not required to ask for permission to use a state vehicle, and that the Justices were not required to provide a purpose for using the vehicle to any member of the Supreme Court staff.  In fact, the repeated testimony at trial was that the Defendant did not provide even destinations to the security staff when he took a vehicle.  In the absence of any such underlying rule or regulation – or material statement to another – it is simply not possible as a legal or factual matter for any use of the vehicle or purchase of gasoline to constitute this offense.

4.  (Although not directly relevant to the Defendant's trial, the Stipulation of Fact used to support the plea of Justice Menis Ketchum to a count of wire fraud based upon the personal use of a state vehicle does not allege any violation of an underlying rule or regulation. Instead, the Stipulation merely states that Justice Ketchum knew that "substantial use of State property for purely personal reasons **could** violate provisions or the State's

ethical statutes and rules." Case No. 2:18-cr-00152, Doc. 7, p. 12 (emphasis added). There was no evidence or testimony concerning State ethical statutes or rules in the Defendant's trial.)

**C. Count 20 – Witness Tampering**

5. The evidence presented was insufficient to sustain a conviction of witness tampering. Specifically, there was no evidence Defendant knowingly attempted to corruptly persuade or engage in misleading conduct toward another person with intent to influence and prevent the testimony of a person in an official proceeding or that Defendant had reason to believe a federal grand jury investigation into Supreme Court funds was likely to be instituted in the near future or that he attempted to coach an employee with the intent to dishonestly influence and prevent future truthful testimony by the employee before the federal grand jury.

6. On October 18, 2017, Jennifer Bundy, the supreme court's public information officer, sent an email to Administrative Director Gary Johnson, General Counsel Chris Morris, and General Counsel Lori Paletta-Davis stating WCHS television reporter Kennie Bass called her about a $34K couch purchased by the Court and asserted that Defendant's 2013 office renovations were twice as costly as the renovations that occurred in the other justices' offices. On October 19, 2017, a meeting was held in Director Johnson's office with Defendant (then-Chief Justice), Counsel Morris, Counsel Paletta-Davis, and Chief Financial Officer Sue Racer-Troy to discuss the issues. At some point, Director Johnson called for Kim Ellis to attend the meeting to attempt to ascertain how to come up with information relevant to renovation spending because the prior administrative director had been fired and thus his knowledge of those projects was unavailable. More specifically, neither Johnson, Morris, nor Paletta-Davis were employees of the Supreme Court during the renovations and

had no firsthand knowledge surrounding them, but Ellis had involvement with the renovations that occurred throughout the first, third, and fourth floors of the Supreme Court offices, both as a Supreme Court employee and previously as an employee to the architect firm hired to work with these projects. Ellis attended and secretly recorded the October 19, 2017, meeting.

7. To support this charge, the United States introduced a portion of a tape recording made by Kim Ellis of a meeting between Ms. Ellis, the Defendant, Director Johnson, two Supreme Court lawyers, and Sue Racer Troy. In the meeting, the Defendant simply asked Ms. Ellis if she recalled a conversation with him. Ms. Ellis replied that she did not. Gary Johnson then proceeded to continue with the meeting.

8. Prior to October 18, 2017, there were no media inquiries regarding the Supreme Court office expenditures and there is no known evidence that Supreme Court spending was the subject of media or investigative scrutiny by any person or agency at that time. In fact, the first press story did not air until November 13, 2017, nearly one month after the October 19, 2017, meeting.

9. On October 20, 2017, Defendant called acting United States Attorney Carol Casto to discuss myriad concerns regarding Supreme Court spending not limited to expenditures for furnishings. On November 20, 2017, Defendant, Justice Margaret Workman, Administrator Johnson, Counsel Morris, and CFO Racer-Troy met with FBI Special Agent James Lafferty and AUSA Steve Loew to discuss their concerns regarding certain spending. Justice Workman presented her concerns and also provided documentation to the government at that time. Even at this point, more than one month after Defendant's first contact with the US Attorney's Office, it was unknown as to whether or to what extent an investigation would ensue. Equally important, while Defendant had

4

previously contacted the US Attorney's Office more than one year earlier, in August of 2016, specifically requesting an investigation of other Supreme Court spending, no such grand jury investigation ever occurred.  As such, on October 19, 2017, Defendant had no way of knowing if a grand jury investigation would occur as a result of his October 20, 2017, call to the same office.  Moreover, it was not until sometime in December 2017 that a letter was sent to Counsel Morris with an attached subpoena returnable January 3, 2018.

       10.  The October 19, 2017, meeting was attended by no less than six people.  Had he wanted to tamper with Ellis's testimony in this yet unknown investigation, the Defendant would have likely met with her privately in her office, his office, or at another location and expressed his directions.  The recording of the meeting by Ellis was approximately 22 minutes in length.  The witness tampering allegation centers around approximately sixteen seconds of this meeting wherein Defendant asked Ellis: "Well, when we did my office, and I remember I specifically, and I don't know, you can tell me if you remember this or not, but I was very specific over and over and over that whatever we spend on anything I don't want mine to be more than Menis or Margaret's.  Do you recall those conversations?"  Ellis responded: "Um, I don't."  The Defendant did not follow up.

       11.  This was a single question with a simple response during a meeting with multiple people in attendance.  The Defendant did not follow up with additional questions or comments. He did not ask: "Are you sure?" He did not say "I disagree with you." Instead, his response was to say nothing as Director Johnson began speaking and discussing other issues.  This brief exchange is the sole basis for the government's tampering charge and it is woefully inadequate.

**D.  Conclusion**

Because the evidence introduced in this case is insufficient even in the light most favorable to the United States to sustain a conviction of the specified Counts, the Defendant respectfully requests that this Court enter a judgement of acquittal on these Counts, and Order a new trial on any remaining Counts.

**Respectfully submitted,**

**ALLEN H. LOUGHRY, II**
**By Counsel**

s/ John A. Carr
John A. Carr, Esq. (WVSB #10461)
John A. Carr Attorney at Law, PLLC
179 Summers Street, Ste 209
Charleston, WV 25301
304-344-4822
E-mail:  jcarr@jcarrlaw.com

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
### CHARLESTON DIVISION

**UNITED STATES OF AMERICA**

v.  CASE NO:  2:18-cr-00134-1

**ALLEN H. LOUGHRY, II**

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that a true and accurate copy of the foregoing **"Defendant's Second Motion for a New Trial"** was served with the Clerk of the Court using CM/ECF system which will send notification of such filing to the following CM/ECF participants:

Philip H. Wright
Assistant United States Attorney
300 Virginia Street, East, Room 4000
Charleston, WV 25301

Date:  November 6, 2018

<u>s/ John A. Carr</u>
John A. Carr, Esq. (WVSB #10461)
John A. Carr Attorney at Law, PLLC
179 Summers Street, Ste 209
Charleston, WV 25301
304-344-4822
E-mail:  jcarr@jcarrlaw.com